UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
                                       :

ALEJANDRA LAVAYEN, *as administrator of the estate* :
*of Francisco Gadea Pacheco, individually, and as a* :
*parent and guardian of* ARELI BETHSABE LAVAYEN :
GADEA, EZEQUIEL LAVAYEN GADEA,        :            26-CV-535 (JMF)
                                         :

               Plaintiff,,          :
                                       :      MEMORANDUM OPINION
        -v-                      :         AND ORDER
                                       :

LYFT, INC. et al.,                      :
                                       :

             Defendants.     :
                                       :
-------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

Plaintiff Alejandra Lavayen, in her capacity as Administrator of the Estate of Francisco Gadea Pacheco, individually, and as a parent and guardian of two children, brought this action against the car service Lyft, Inc. ("Lyft"), and a Lyft driver, in connection with the death of Gadea Pacheco after he was allegedly forced to exit a Lyft rideshare vehicle. *See* ECF No. 1-1 ("Compl."), ¶¶ 25-32. Lyft now moves, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, to compel arbitration and stay the case, arguing that Gadea Pacheco agreed to arbitrate all disputes arising out of or relating to Lyft in its December 13, 2024 Terms of Service (the "Terms"). *See* ECF No. 7; ECF No. 8 ("Def.'s Mem."); ECF No. 9-12 ("Terms"). Upon review of the parties' motion papers, the Court GRANTS the motion and STAYS the case in its entirety.

When deciding whether to compel arbitration, courts "apply a standard similar to that applicable for a motion for summary judgment." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (cleaned up). Where, as here, the plaintiff brings state-law claims, the Court must determine "(1) whether there exists a valid agreement to arbitrate at all under the contract in

question . . . and if so, (2) whether the particular dispute sought to be arbitrated falls within the scope of the arbitration agreement." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Belco Petroleum Corp.,* 88 F.3d 129, 135 (2d Cir. 1996); *accord Jacobs v. USA Track & Field,* 374 F.3d 85, 88 (2d Cir. 2004). "[T]he party seeking arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made" under state law. *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 50 (2d Cir. 2022) (cleaned up); *see, e.g.*, *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002) ("[T]he ultimate question of whether the parties agreed to arbitrate is determined by state law."). "Once the existence of an agreement to arbitrate is established, the burden shifts to the party seeking to avoid arbitration to 'show[] the agreement to be inapplicable or invalid.'" *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 102 (2d Cir. 2022) (quoting *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 124 (2d Cir. 2010)).

Here, Lavayen does not seriously dispute that the Terms, which were in effect at the time of Gadea Pacheco's death, included a broad arbitration provision. *See* Terms ¶ 17 (providing that the parties "AGREE TO WAIVE OUR RESPECTIVE RIGHTS TO RESOLUTION OF DISPUTES IN A COURT OF LAW BY A JUDGE OR JURY AND AGREE TO RESOLVE ANY DISPUTE BY ARBITRATION"). Instead, she contends that Defendants have not demonstrated that Gadea Pacheco himself agreed to the Terms. ECF No. 12-3 ("Pls.' Mem."), ¶¶ 22-35. That is not the case. The record confirms that Gadea Pacheco affirmatively consented to the Terms, or materially identical terms of service, on five different occasions before the accident. ECF No. 9-2 ("Simmons Decl."), ¶¶ 12-13. Moreover, "[a] user cannot access the Lyft software platform without first creating a Lyft user account, and cannot request or purchase Rideshare Services through the Lyft App unless they have affirmatively accepted Lyft's Terms of Service." *Id.* ¶ 8. Lavayen suggests in her brief that another person could have ordered the

Lyft for Gadea Pacheco that night, *see* Pls.' Mem. ¶ 26, but that suggestion is belied by the evidence and her own allegations in the Complaint and elsewhere.  *See* Simmons Decl. ¶ 13 (showing that the subject ride was ordered by a Lyft user with the unique User ID associated with Gadea Pacheco); Pls.' Mem. ¶ 15 (stating that "Plaintiff ordered a Lyft rideshare to pick him up"); Compl. ¶ 27 (alleging, upon information and belief, that Gadea Pacheco "ordered" the Lyft).  Both New York state courts and federal courts have consistently treated this caliber of evidence as sufficient to establish a valid agreement to arbitrate.[1]

Lavayen's other evidentiary challenges to Lyft's Terms are also without merit.  First, as Lavayen herself acknowledges, the Dead Man's Statute applies only to oral testimony, not to documentary evidence.  Pls.' Mem. ¶ 24; *see, e.g.*, *Rubin v. Kurzman*, 436 F. Supp. 1044, 1048 (S.D.N.Y. 1977) ("[The Dead Man's Statute] prohibits testimony of non-written communications concerning transactions between an interested witness or party and a decedent.").  Second, Lyft's provision of an original electronic copy of the Terms satisfies the best evidence rule.  ECF No. 9-12; *See* FED. R. EVID. 1001(d) (defining an "original" of a writing that is "electronically stored" as "any printout — or other output readable by sight — if it accurately reflects the information").  Third, Lyft sufficiently authenticated the online agreement through the declaration of its corporate representative who personally accessed Lyft's business records.  *See* ECF No. 9-2, ¶¶ 1-3, 10-11; *see also* FED. R. EVID. 901(b); *Knight v. N.Y. & Presbyterian Hosp.*, 252 N.E.3d 496, 500 (N.Y. 2024) (holding that electronic signatures of deceased individuals can be authenticated with "sufficient circumstantial evidence of authenticity," including testimony that

---

[1]    *See, e.g.*, *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 70 (2d. Cir. 2017); *Wu v. Uber Techs., Inc.*, 260 N.E.3d 1060, 1065-66 (N.Y. 2024); *Camilo v. Lyft, Inc.*, 384 F. Supp. 3d 435, 440 (S.D.N.Y. 2019); *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 469 (S.D.N.Y. 2017) (same); *see also* Def.'s Mem. ¶ 18 n.4 (collecting New York state cases holding that Lyft's Terms and arbitration provision are valid and enforceable); *id.* ¶ 19 (collecting federal cases holding the same).

records were reliably kept and maintained in the ordinary course of business).

In short, Defendants have demonstrated that there was a valid agreement to arbitrate. Further, Lavayen's claims would appear to fall well within its broad scope.  In any event, the Terms expressly commit all questions of arbitrability to the arbitrator, "including disputes about the scope, applicability, enforceability, revocability or validity of the Arbitration Agreement." Terms ¶ 17(a).  Accordingly, Lavayen's other arguments against arbitration of some or all her claims — including whether the arbitration agreement is unenforceable because of the severity of the underlying accident, *see* Pls.' Mem. ¶¶ 21, 36-41 — are for the arbitrator to decide.  *See, e.g.*, *Henry Schein, Inc. v. Archer & White Sales, Inc*., 586 U.S. 63, 68 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, . . . a court possesses no power to decide the arbitrability issue."); *Ross v. Finzer,* No. 25-CV-1179 (DEH) (VF), 2025 WL 2860070, at *7 (S.D.N.Y. Oct. 8, 2025) ("[B]ecause there is clear and unmistakable evidence of the parties' intent to delegate issues of arbitrability to the arbitrator, whether Plaintiff's claims fall within the scope of the arbitration agreement is for the arbitrator to decide."); *see also Geller v. Uber Techs., Inc.,* No. 1-24-1458, 2025 WL 1696164, *6 (Ill. App. Ct. June 17, 2025) (holding that whether wrongful death claims fall within the scope of Uber's arbitration agreement was a question for the arbitrator), *appeal allowed,* 270 N.E.3d 845 (Ill. 2025).

For these reasons, Lyft's motion to compel arbitration must be and is GRANTED. Additionally, because Lyft requests a stay, the action must be and is STAYED pending resolution of the arbitration.  *See* 9 U.S.C. § 3 ("[T]he court . . . , upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration . . . , *shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." (emphasis added)); *Katz v. Cellco P'ship*, 794 F.3d 341, 345

(2d Cir. 2015) ("We join those Circuits that consider a stay of proceedings necessary after all claims have been referred to arbitration and a stay requested.").  That said, the Court sees no reason to keep the case open pending arbitration.  Accordingly, the Clerk of Court is directed to (1) terminate ECF No. 7; and (2) administratively close the case, without prejudice to either side moving by letter-motion to reopen the case **within thirty days of the conclusion of the arbitration proceedings.**

SO ORDERED.

Dated: May 28, 2026
       New York, New York

_____
JESSE M. FURMAN
United States District Judge

5